IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. WHITCOMB


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

ALEXANDER C. WHITCOMB, APPELLANT.


Filed August 7, 2018.    No. A-17-934.


Appeal from the District Court for Douglas County: W. MARK ASHFORD, Judge. Reversed and remanded for further proceedings.

Alexander C. Whitcomb, pro se.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.


PIRTLE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

## INTRODUCTION

Alexander C. Whitcomb, pro se, appeals from the Douglas County District Court's order denying him relief related to his claim that he has served his time under a sentencing order entered May 13, 2014. For the reasons set forth below, we reverse and remand for further proceedings.

## BACKGROUND

In January 2013, Whitcomb was charged with one count of carrying a concealed weapon, second offense; he entered a guilty plea in September. Following a hearing on May 12, 2014, the district court entered a "Sentencing Order" on May 13. Whitcomb was sentenced to 20 months' to five years' imprisonment, with credit for 44 days previously served; the order was silent on whether the sentence would run concurrently or consecutively to any other sentence.

According to Whitcomb, immediately after sentencing, he was taken into the custody of state correctional services to await sentencing in a federal case. On June 2, 2014, the district court entered a "Sentencing Order Nunc Pro Tunc," which imposed the same term of incarceration previously ordered on May 13, but which added the language, "to be served consecutively to [Whitcomb's] current Federal sentence[.]"

Whitcomb claims he was not given notice of the nunc pro tunc sentencing order until a detainer was filed in July 2016. He filed a pro se "Motion for Permission to reconsider out of timeline Pursuant to State Law" on February 17, 2017. That motion indicated he was sentenced in May 2014, and that his attorney had requested that Whitcomb's state sentence should run concurrently with his federal sentence, but that the issue was never resolved by the court and he recently learned "of a detainer placed on him for this matter." His motion claimed that during sentencing there was "back and forth disagreement" between his lawyer and the prosecutor on whether Whitcomb's federal case should be concurrent or consecutive to his state case. The February 17, 2017, motion included an affidavit signed by Whitcomb.

Whitcomb filed another pro se motion on June 27, 2017, titled "Neb. Rev. Stat. 29-3001 Motion - 'Coramnobis'" which alleged his attorney submitted an improper waiver of arraignment and that he was never served a copy of either the county court complaint or the district court information. This motion requested that he be discharged from his conviction and sentence.

Our record also contains a document filed on July 17, 2017, titled in the same manner as the June 27 document just discussed. It contains the same allegations as the June 27 filing, but also claims that his sentence "expired in 2015." Another motion was filed July 31, 2017, titled "2nd Neb. Rev. Stat. 29-3001 Motion - 'Coramnobis.'" It contains similar allegations as the July 17 motion, but adds further assertions related to his sentence "jam date" and to the Second Amendment and his right to bear arms since he had no prior felony convictions.

A hearing on Whitcomb's motions took place on July 31, 2017; a deputy county attorney was present in the courtroom on behalf of the State and Whitcomb participated by telephone. Whitcomb confirmed the court's stated understanding that Whitcomb was asking the court to change his sentence to run concurrent with Whitcomb's federal confinement. The State responded, "I read through the sentencing in this case and the Court clearly had this issue in front of him and the Court declined to rule on whether it should be concurrent or consecutive because it showed that the federal sentence wasn't in place." Whitcomb stated the district court was "the first court that has sentenced [him]," and he was sent to the "Lincoln Correctional Center, the Diagnostic & Evaluation Center" to "take DNA, get an NDOC number and . . . to take pictures."

In response to the arguments, the court stated: "The way I recall - I'll have to look at the record, but as I recall, I made no distinction as to whether it should be concurrent or consecutive to federal because you hadn't yet been sentenced." The district court entered an order on August 3, 2017, indicating that the matters before the court were the motion for "writ of coram nobis filed June 27, 2017, and motions to reconsider filed February 17, 2017." (Although the district court refers to "motions" filed in February 2017, the record before this court contains only the one February motion set forth above.) The district court's order begins by noting the following:

> The motions seek essentially the same relief, which is for this Court to impose a new sentence that would allow [Whitcomb's] state sentence to run concurrent to his federal

sentence. . . . [Whitcomb] conceded at the hearing and the record supports that at the time of his sentencing [hearing] on May 12, 2014, [Whitcomb] had yet to be sentenced federally and this Court did not take any position on the state sentence running consecutively or concurrently for that reason. [Whitcomb's] motions are denied for the following reasons[.]

As for the "[m]otions to reconsider sentence," the order states:

[Whitcomb] filed motions February 17, 2017, with different titles that seek this Court to reconsider the sentence imposed on May 12, 2014. [Whitcomb's] motions making this re-sentencing request are not brought under a particular statutory section and this Court is not aware of any collateral attack or statutory remedy that gives this Court jurisdiction to make such a change to a sentence imposed in 2014. . . . Thus, [Whitcomb's] motions are denied.

The district court's order next states that Whitcomb "also seeks to have his sentence changed pursuant to a writ of error coram nobis, however, his allegations do not support relief under a writ of error coram nobis." We note that the June 2017 "Coramnobis" motion did not raise any sentencing concerns; however, the "Coramnobis" motions filed in July did; therefore, although the written order only referred to the June coram nobis motion, the court appears to have included consideration of the July motions as well. Notably, all the "Coramnobis" motions contained a reference in their titles to "Neb. Rev. Stat. 29-3001," which relates to postconviction proceedings. The district court did not address whether the relief requested could be considered under the postconviction statutes. The district court concluded only that Whitcomb's request to have his sentence changed did not support relief under a writ of error coram nobis.

Whitcomb appeals from the district court's August 3, 2017, order.

## ASSIGNMENTS OF ERROR

Whitcomb assigns, restated, that the district court's initial sentencing order was silent as to whether his sentence was to be served concurrently or consecutively to any other sentence, and the court erred by later changing the order to make his sentence run consecutively to a federal sentence which had not yet been imposed. Further, he claims that his Nebraska sentence began to run upon his commitment to a state facility following the initial sentence, and that therefore, he has completed his sentence.

## STANDARD OF REVIEW

To the extent questions of law are involved, an appellate court is obligated to reach conclusions independent of the decisions reached by the court below. *Garza v. Kenney*, 264 Neb. 146, 646 N.W.2d 579 (2002).

## ANALYSIS

Whitcomb states that the original May 13, 2014, sentencing order did not "say or express that [his] sentence was consecutive to any other sentence and no other sentence existed." Brief for

appellant at 8. He argues that on June 2, the district court "amended [his] sentence to run consecutively to a non-existing federal sentence that had not occurred." *Id*. Whitcomb claims he was not given notice of this later order as his lawyer "abandoned" him after sentencing, and therefore, Whitcomb "was not aware of the situation until a detainer was placed on July 27, 2016." *Id*. Whitcomb contends that the district court did not have the authority to order a sentence to run consecutively or concurrently to a future federal sentence, and that his sentence "should have started on May 14, 2014[,] and be expired by now." *Id*. at 10.

No one disputes that the original sentencing order was silent on whether Whitcomb's sentence would run concurrently or consecutively to any other sentence. The comments made by the court and the State at the July 31, 2017, hearing, as noted above, as well as the court's August 3 written order, confirm that the court was aware of the pending federal matter at the time of Whitcomb's original sentencing and elected to not address the concurrent or consecutive nature of Whitcomb's sentence at that time. However, after the original May 2014 sentencing order was filed, the district court subsequently entered a "Sentencing Order Nunc Pro Tunc" on June 2. Unlike the original sentencing order, the June 2 order stated that Whitcomb's sentence was "to be served consecutively to [Whitcomb's] Federal sentence[.]" Whitcomb claims the federal sentence did not exist as of June 2.

The State asserts that "Whitcomb has not provided a record that permits a review of this claim" since he did not provide "the plea and sentencing hearings from his state court proceedings back in 2013, nor . . . any filings, transcripts, orders, or any other records from his federal court proceedings that apparently took place around that same time." Brief for appellee at 5. Although it is true that there is nothing in the record related to Whitcomb's federal sentence, the lack of information related to that conviction and sentence is not particularly critical to this court's review of the errors raised by Whitcomb. Further, as set forth above, the comments made by the court at the July 31, 2017, hearing, as well as the court's August 3 written order, confirm that the court was aware of the pending federal matter at the time of Whitcomb's original sentencing and elected to not address the concurrent or consecutive nature of Whitcomb's sentence at that time.

Accordingly, the issue is whether the June 2, 2014, nunc pro tunc sentencing order was valid, given that it changed the terms of the original May 13 sentencing order. If the nunc pro tunc order was entered merely to conform the written order to the court's original oral pronouncement, it would be an appropriate nunc pro tunc order. See *State v. Sims*, 277 Neb. 192, 761 N.W.2d 527 (2009) (order nunc pro tunc can correct discrepancy in written sentencing order to accurately reflect sentence pronounced at sentencing hearing). See, also, *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016) (when sentence orally pronounced at sentencing hearing differs from later written sentence, former prevails). But see, *State v. Bol*, 288 Neb. 144, 846 N.W.2d 241 (2014) (it is not function of order nunc pro tunc to change or revise judgment or order, or to set aside judgment actually rendered, or to render order different from one actually rendered, even though such order was not order intended); *State v. Sims, supra* (sentence validly imposed takes effect from time it is pronounced and cannot be modified, amended, or revised in any way, either during or after term or session of court at which sentence was imposed; any attempt to do so is of no effect, and original sentence remains in force).

In the present matter, the court's oral pronouncement of sentence at the original hearing would prevail over a later written sentence. See *State v. Olbricht, supra*. In this case, the original sentencing order entered May 13, 2014, was silent as to Whitcomb's sentence being concurrent or consecutive to any other sentence. And although the bill of exceptions supplied to this court does not contain a verbatim transcription of the May 12 sentencing hearing, the record is nevertheless sufficient for our consideration of what was orally pronounced at that hearing. The district court's and the State's statements at the July 31, 2017, hearing on Whitcomb's motions, as set forth above, confirm that when Whitcomb was originally sentenced, the court did not orally pronounce that Whitcomb's sentence would be served consecutively to any other sentence. Further, the court's August 3, 2017, written order states, "the record supports that at the time of his sentencing [hearing] on May 12, 2014, [Whitcomb] had yet to be sentenced federally," and the court "did not take any position on the state sentence running consecutively or concurrently for that reason." Accordingly, the May 13, 2014, sentencing order was consistent with what was orally pronounced on May 12, and was therefore a valid order. However, the June 2 nunc pro tunc order, which ordered that Whitcomb's sentence run consecutively to his federal sentence, is not consistent with the earlier oral pronouncement of sentence and is therefore not a valid order. See *State v. Bol, supra*. Therefore, the May 13 sentencing order, which was silent as to the term being consecutive or concurrent to any other sentence, is the order controlling the duration of Whitcomb's state incarceration.

However, in its August 3, 2017, order, the district court did not determine whether Whitcomb was still properly held in state custody under the May 13, 2014, sentencing order. Nor did the district court address the validity of the June 2 nunc pro tunc sentencing order. Instead, the district court concluded that Whitcomb's motions "making this re-sentencing request are not brought under a particular statutory section and this Court is not aware of any collateral attack or statutory remedy that gives this Court jurisdiction to make such a change to a sentence imposed in 2014." The court also concluded that a writ of error coram nobis is not available for the sentencing relief sought by Whitcomb.

We agree with the district court that a writ of error coram nobis is not a proper mechanism for the relief Whitcomb seeks. The writ reaches only matters of fact unknown to the applicant at the time of judgment, not discoverable through reasonable diligence, and which are of a nature that, if known by the court, would have prevented entry of judgment. *State v. Hessler*, 295 Neb. 70, 886 N.W.2d 280 (2016). The writ is not available to correct errors of law. *Id*. The alleged error of fact must be such that it would have prevented a conviction. See *id*. Whitcomb does not claim the existence of facts which would have prevented his conviction; rather, his claim pertains to his state sentence being served consecutively to his federal sentence. The court correctly denied Whitcomb relief pursuant to his request for a writ of error coram nobis.

However, the district court did not consider Whitcomb's motions in the context of postconviction relief. Several of Whitcomb's motions contain a reference in their title to Neb. Rev. Stat. § 29-3001 (Reissue 2016), the postconviction statute which provides the process for a prisoner in custody seeking to vacate or set aside a sentence on the basis that there was a denial or infringement of his rights under the state or federal Constitutions so as to render the judgment void or voidable. Importantly, a void judgment can be attacked at any time in any proceeding. *State v.*

*Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018) (addressing on appeal defendant's postconviction claim that sentence was void even though argument was not raised below).

Our case law establishes that challenges to an alleged invalid or void sentence can be made through postconviction proceedings or, more frequently, through habeas corpus proceedings. See *State v. Smith*, 295 Neb. 957, 974, 892 N.W.2d 52, 63 (2017) (action for habeas corpus appropriate to attack void sentence; "void sentence is no sentence"); *State v. Nollen*, 296 Neb. 94, 892 N.W.2d 81 (2017) (principles of void sentence constituting no sentence applicable in postconviction action). Where a party is unlawfully restrained of his or her liberty, the writ of habeas corpus is the appropriate remedy. *Meyer v. Frakes*, 294 Neb. 668, 884 N.W.2d 131 (2016). A writ of habeas corpus is a remedy which is constitutionally available in a proceeding to challenge and test the legality of a person's detention, imprisonment, or custodial deprivation of liberty. *Id*. See, also, *State v. Goynes*, 293 Neb. 288, 876 N.W.2d 912 (2016) (concluding postconviction action untimely, but noting claim that criminal sentence is void may be ground for relief in form of writ of habeas corpus).

None of Whitcomb's filings indicate that he is seeking a writ of habeas corpus pursuant to Neb. Rev. Stat. § 29-2801 (Reissue 2016). However, as previously noted, his motions do refer to § 29-3001, but the district court did not consider Whitcomb's claims in the context of postconviction relief. The State contends Whitcomb's claim is procedurally barred because it could have been raised on direct appeal. See *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017) (party cannot raise issue in postconviction motion if he or she could have raised same issue on direct appeal). However, Whitcomb would have had no reason to appeal the valid May 13, 2014, sentencing order as it was silent as to his sentence being concurrent or consecutive to any other sentence. And with regard to the subsequent June 2 nunc pro tunc sentencing order, Whitcomb would have had to appeal within 30 days of its entry. According to Whitcomb, he did not become aware of the nunc pro tunc order until a detainer was filed in July 2016. Whether postconviction relief is available to Whitcomb to address the legality of his continued incarceration in light of the invalid June 2 nunc pro tunc sentencing order was not addressed by the district court. Therefore, we reverse, and remand for further proceedings for such a determination to be made.

For the sake of completeness, we note that the State suggests that even if Whitcomb properly brought his claim in the district court, it is nonetheless without merit, as "there is nothing improper about the fact that his state sentence is being served consecutively to his federal sentence." Brief for appellee at 7. The State suggests that "this is the default for how such sentences should be served." *Id*. We agree with the State that *State v. Hunnel*, 290 Neb. 1039, 1045, 863 N.W.2d 442, 447 (2015), stands for the following proposition: "With regard to a federal sentence still being served at the time of sentencing on a state conviction, we have said that the second sentence does not begin to run until the sentence which the prisoner is serving in another court has expired, unless the court pronouncing the sentence specifically states otherwise." However, the record in this case does not support that Whitcomb was already sentenced or serving his federal sentence at the time the district court pronounced his state sentence. Rather, the district court stated in its August 3, 2017, order that "[Whitcomb] conceded at the hearing and the record supports that at the time of his sentencing [hearing] on May 12, 2014, [Whitcomb] had yet to be sentenced federally and this Court did not take any position on the state sentence running consecutively or

concurrently for that reason." Therefore, the proposition set forth in *State v. Hunnel, supra*, is not applicable here. See, also, *Nelson v. Wolff*, 190 Neb. 141, 206 N.W.2d 563 (1973) (denial of petition for writ of habeas corpus affirmed in case where state sentence was entered after defendant was already serving federal sentence; later state sentence did not begin to run until sentence prisoner was already serving expired, unless court pronouncing second sentence specifically states otherwise).

We also note that *State v. McNerny*, 239 Neb. 887, 479 N.W.2d 454 (1992), acknowledges the rule that unless a court imposing a later independent sentence specifically states otherwise at the time of its pronouncement, the later sentence is to be served consecutively to any earlier imposed sentence or sentences. In the present case, it would appear the federal sentence became the later imposed sentence, and we do not have in our record what that order indicated with regard to when it was to run in relation to the state sentence. Further, we also note that the rule is different when multiple sentences are imposed at the same time in the same court. "In such event, unless the court specifically states otherwise at the time the sentences are pronounced, they run concurrently with each other." *Id*. at 890, 479 N.W.2d at 456.

In the present case, the state sentence was pronounced in a hearing independent and separate from the later imposed federal sentence. Whitcomb claims he was immediately taken into state custody while awaiting his federal sentencing and that his state sentence commenced at that time. This issue was not addressed by the district court and should be addressed on remand, to the extent the district court concludes Whitcomb's action can proceed under the postconviction statutes.

## CONCLUSION

For the reasons set forth above, we reverse and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.